NEWTON M. WHITMAN, *in equity, versus* GEORGE M. WESTON.

A deed of land will not be reformed, (upon a bill in equity,) for a mistake in its boundaries, to the injury of one who has purchased of the grantee in good faith, and without notice of the mistake.

A lot of land was included in a deed to defendant's grantor by mistake in the descriptions of the boundaries, and the defendant purchased the same in good faith and without notice of any mistake. *Held,* that equity would not disturb his title.

BILL IN EQUITY, praying for a decree, requiring the defendant to release to the plaintiff all his right, title and interest in and to a lot of land known as lot B.

The bill alleged, that John R. Adan and others, trustees under the will of Benjamin Bussey, by their deed of July 6, 1844, duly made and recorded, conveyed to him, by metes and bounds, lot B, and that he entered into possession of the same; that on the 6th of July, 1841, the plaintiff took a bond for a deed of said land, from said Bussey's agent; that by virtue of said bond, he, by his tenant, Samuel Lombard, built a house upon the land, and afterwards cleared, improved and cultivated from five to ten acres of it; that said Lombard and other persons, tenants of the plaintiff, continued to occupy and to improve the house and the land, cleared as aforesaid, and were in actual possession thereof, at the time of the conveyance to the defendant; that, while the plaintiff continued such possession, the defendant, between Jan. 1, and Aug. 1, 1847, broke and entered the lot and cut and hauled off a large quantity of pine trees; that the defendant claimed title to lot B aforesaid, by deeds of quitclaim and release, from the heirs of Francis Butler, one of the deeds being dated December 22, 1846, and the others, Feb. 2 and April 1, 1847; that defendant pretended that Bussey, in his lifetime, and prior to the conveyance of said lot to the plaintiff, on July 6, 1844, conveyed said lot B, to said Butler, who has since deceased; that said Bussey, on the 30th July, 1834, conveyed by deed of warranty to said Butler, the following tract of land, to wit: "being and lying on a new road leading from State street to

Orono town line, and lying on the north-east side of said road, beginning at the *north-west corner of lot B*, thence, &c. &c., to place begun at, containing $178\frac{1}{4}$ acres more or less;" that in drafting said deed, there was a mistake made in the point of beginning, whereby said deed was made to include the said letter B, against the intention of the parties thereto; that neither said Butler or his heirs ever entered into actual possession of any part thereof; that the whole mistake consisted in using the words "north-west," instead of "south-west" corner of lot B, as the place of beginning; that all the calls in the description in said deed, would then be answered by monuments upon the face of the earth, and the quantity of land would agree with the number of acres specified.

The bill also alleged, that defendant well knew all the facts, touching said mistake, and misdescription, and also that the plaintiff was in possession of said lot B, claiming to own the same by his deed aforesaid, duly recorded; that said mistake was not discovered by said Bussey in his lifetime, nor by said trustees, prior to their conveyance to the plaintiff, nor by the plaintiff until after said conveyances to defendant; and that defendant insists upon his title to lot B.

Defendant in his answer admitted nearly all that was alleged in the bill, except the charge that he knew of the mistake and of the plaintiff's occupation of the land. His answer on this part of the case was, that at the time of his purchase, he had never seen the land, and knew nothing about the monuments, that he knew nothing of plaintiff or of his possession of lot B, or of any mistake real or supposed, in the deed to Butler. He was told, there was a lot of land on Essex street, belonging to the Butler heirs, valuable among other things for its pine; that he sent an agent to explore, who reported favorably, and the next day he went to the owners to purchase it, and they conveyed in the precise words of the grant to their father, deceased 18 months before.

*Hobbs*, for the complainant.

The case of *Peterson* v. *Grover*, 20 Maine, 363, is decisive

of the jurisdiction and power of this Court as a Court of equity.

It is also decisive of the case at bar, on the merits, unless this case is distinguishable from that.

In this case, the mistake is admitted as stated in the bill, or rather the facts from which it is deducible.

The only question is, whether Weston is affected by it, as the grantee of the heirs of Butler, the original purchaser from Bussey.

Weston's title from the minor heirs, is a mere naked release of " all their right, title and interest" in the lot *mistakenly* described, and he took from those heirs, who were of age, a quit-claim deed only, of all their right, &c.

Weston thus stands in the place of Butler and his heirs at law. Between them and Bussey, there could be no doubt of the power of the Court, to grant relief; and Weston is their representative and must yield to the same principles affecting his title. Rev. Stat. chap. 91, sect. 8.

The heirs of Butler had a legal estate originating in mistake, and Weston has no more, and is subject to be set right in equity.

Weston is thus liable, whether he had notice of the mistake or not.

But he had notice, actual or constructive, sufficient to affect his title, or to subject him to the correction of the mistake. *Warren* v. *Ireland*, 29 Maine, 62. *Washburne* v. *Merrills*, 1 Day's Cases in Error, 139, is a strong case for the plaintiff. Story's Eq. sect. 399 to 409.

The notice affecting Weston's title, if any is necessary, need not be so full as that affecting a subsequent purchaser, in case of an unregistered deed.

The case, 1 Day's Cases in Error, was as follows : —

A mortgager, by mistake, made an absolute deed ; and the mortgagee who got into possession, sold to a purchaser, by a deed with covenants of warranty. A purchaser under the mortgager, filed his bill against the purchaser under the mortgagee to redeem. The answer set up the statute of frauds in

defence, and on trial, parol proof of the mistake was offered by the plaintiff and admitted, and the deed reformed, and a right of redemption decreed. No point was made of the want of notice. This decree was unanimously confirmed by the Court of errors. Cases cited. 1 Sug. Vend. 6th Amer. Ed. 180, (259 old) note.

*Weston, pro se.*

TENNEY, J. — Notwithstanding the general principle, that parol testimony is incompetent to vary the effect of written instruments, mistakes therein, whether they are agreements executory, or executed, may be reformed by Courts of Equity, when such mistakes are shown to exist, so that the intention of the parties may be effected. But this relief will never be afforded, when the mistake is not proved to the entire satisfaction of the Court, inasmuch as the parties are presumed to have expressed in their written contract their actual intention. And it is usual to require some other proof than the simple recollection of those present at the making of the contract. If there are other written instruments, which have a relation to that in which the alleged mistake is found, satisfactory light may be obtained therefrom. If there are inconsistencies between one part of a written instrument and another, which cannot be reconciled, and if those inconsistencies disappear by the alteration of a single word, it may be abundantly evident, that a mistake was made.

In this case Butler's grantor could not have intended to convey a tract of land by courses and distances, referring to monuments, which were prepared as the termination of several of the lines described, unless there had been a correspondence one with another; and when by changing the place of beginning, there is a perfect coincidence in the different parts of the description, it is manifest, that a mistake was made by the person, who prepared the deed. How far this could have affected the grantee or his heirs in a suit against either would depend upon the facts which might be presented. As appears by the answer in this case, the defendant had in

fact no knowledge of such a mistake.    He took his deed
without having seen the land, upon the report made by his
agent, who was sent to examine the timber to be found there-
on, as it was described in the deed to Butler.

It is insisted, that as the defendant received only quitclaim
deeds of the land from the heirs of Butler, he took merely
the right which Butler had acquired by the deed to him, and
that he stands in no better situation.    It is not suggested, that
the deeds under which the defendant claims, are different from
quitclaim deeds in the usual form, and for a valuable con-
sideration.    The bill alleges them to be deeds of quitclaim
and release, and they are to receive such a construction as
will effect the intention of the parties and not defeat it.    Such
conveyances have been construed to be a bargain and sale,
by which the estate described will pass.    *Pray* v. *Pierce,* 7
Mass. 381.    By Revised Statutes, chap. 91, § 8, "a deed of
release and quitclaim, of the usual form in this State, shall
pass all the estate, which the grantor had, and could convey
by a deed of bargain and sale."    If Bussey's grantee could
have been made subject to the equitable principle by which
his deed could be reformed for the mistake, it could not have
been the intention of the Legislature, that a *bona fide* pur-
chaser, for a valuable consideration, without notice of the
mistake, should not be allowed to protect his title, by reason of
his holding under a deed of release and quitclaim.

The defendant's answer is full and conclusive, that he had
no actual knowledge of the mistake alleged.    Had he such
constructive notice of it, as will charge him therewith?    In
order that he should be so affected, the facts which he is pre-
sumed to have known when he took his deeds must have
been of such a character, that he is not allowed to show by
proof, that he had not the knowledge imputed.    He was
bound to know the state of his grantor's title, as exhibited by
the registry and by the deed to his grantor.    By these he
would find that Bussey conveyed to Butler by metes and
bounds, and nothing in the description would reasonably lead
him to doubt, that this was in all respects as the parties thereto

designed. The quantity of land by computation, according to the length and direction of the lines, would probably have been greater than that named in the deed; but this is wholly immaterial, for an erroneous computation would not control the monuments or the courses and distances; but the deed left the amount uncertain, as appears by the use of the terms "more or less" applied to the quantity.

The failure upon actual experiment, if such may be supposed to have been made, to find the monuments described by running the courses and distances, beginning at the north-west corner of lot letter " B," could not be constructive notice of a mistake in the description. From the time of the execution of Bussey's deed to Butler, more than twelve years had elapsed before the defendant acquired his title. If monuments were in existence, they might not all have been seen, at the time the deeds to him were executed; but several of them were artificial, and made of perishable materials, and might well be supposed to have fallen and disappeared. If all the monuments could have been seen, there was nothing, which must have carried a knowledge to him that they were monuments referred to in the deed, and nothing to indicate in the least, that they were intended as the monuments by which a conveyance had been made, or that the point of beginning therein was different from that expressed in the description.

The actual possession by the plaintiff of a part of lot letter " B," at the time of the defendant's purchase, was not constructive notice to the defendant of the mistake, even if such possession required him at his peril, to institute inquiries in order to ascertain by what title that possession was held. For by inquiry, the most, which could reasonably be expected as the result, would be that the plaintiff had a deed from those authorized by Bussey's will to give deeds of the real estate of which he died the owner, dated on July 6, 1844, and that on the 6th day of July, 1841, he had a bond for a deed of lot letter " B ;" that he subsequently went into possession, built a house and made improvements. All this could not have been a sufficient notice to the defendant, that there had been a

mistake in the boundaries of the land conveyed to Butler, years before. It would at most be evidence, that the same land had been conveyed twice; once by Bussey to Butler, and afterwards, by the trustees under Bussey's will, to the plaintiff, and that the former deed took precedence of the other.

The counsel for the plaintiff relies upon the case of *Washburn* v. *Merrill*, 1 Day's Cases in Error, 139, where by mistake an absolute deed was given instead of a mortgage, as had been agreed. The mortgagee had conveyed. Parol evidence was admitted, which showed the mistake satisfactorily and the deed was reformed. The point was not made that the purchaser of the mortgagee, was a *bona fide* purchaser, for a valuable consideration without notice, and it is to be presumed, that such was not the case. The other case cited from this State, of *Warren* v. *Ireland*, 29 Maine, 62, is not analogous.

*Bill dismissed with costs.*